```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
METROMEDIA COMPANY,                                         :
                              Plaintiff,                    :
                                                            :      13 Civ. 03787 (LGS)
            -against-                                       :
                                                            :      OPINION AND ORDER
RONALD WADE COWAN,                                          :
                              Defendant.                    :
                                                            :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

Before the Court are Plaintiff's Motion for Preliminary Injunction and Defendant's Motion to Dismiss. For the reasons set forth below, Defendant's Motion to Dismiss is granted, and Plaintiff's Motion for Preliminary Injunction is denied as moot.

## PROCEDURAL HISTORY

On June 4, 2013, Plaintiff filed the Complaint in this action, alleging trademark infringement, false designation of origin, injurious falsehood, unfair competition and deceptive trade practice, and submitted an application for a temporary restraining order and preliminary injunction against Defendant. The Court denied the application for a temporary restraining order. On July 9, 2013, Plaintiff filed the pending Motion for Preliminary Injunction. On July 19, 2013, Defendant filed the pending Motion to Dismiss. On August 15, 2013, the Court granted Plaintiff leave to conduct limited jurisdictional discovery concerning Defendant's income for the purpose of establishing personal jurisdiction. On August 26, 2013, Plaintiff served interrogatories upon Defendant. On September 7, 2013, Defendant responded to the interrogatories under penalty of perjury ("Response to Interrogatories"). On September 17, 2013, Plaintiff submitted a letter supplementing its Opposition to the Motion to Dismiss in which

it alleged additional facts obtained from the interrogatories. On September 23, 2013, Defendant filed a response to the Supplemental Letter ("Supplemental Response").

## BACKGROUND

The following facts were taken from the Complaint, Plaintiff's exhibits, Defendant's Response to Interrogatories and Defendant's Supplemental Response.

### A. Plaintiff and the Metromedia Mark

Plaintiff Metromedia Company is a holding company that operates through its affiliates in the natural gas, electricity, software technology, restaurant, food production and medical research sectors. Since 1961, Plaintiff has used the "Metromedia" name in connection with a number of ventures. Plaintiff has used the Metromedia mark extensively and continually in the United States to identify its companies and services for more than 50 years. According to Plaintiff, the mark has acquired secondary meaning and substantial goodwill, has become famous, uniquely identifies Plaintiff's businesses and services and provides instant recognition and credibility for customers and businesses with which Plaintiff becomes associated. Plaintiff alleges that the mark is an asset of incalculable value as a symbol of the multibillion-dollar Metromedia family of companies.

Plaintiff has registered variations of the name and mark "Metromedia" with the United States Patent and Trademark Office and owns several valid and subsisting registrations that incorporate the name and mark Metromedia.

### B. Defendant's Alleged Fraud and Infringing Activities

In 1992, Defendant formed a company with Susan Conway, which was renamed "Metromedia, Inc." in December 2010. In February 2011, Conway converted Metromedia, Inc. from a corporation to a partnership named "Metromedia Company."

Defendant's LinkedIn page, which Plaintiff discovered in April 2013, states that from September 2010 to November 2011, he was CTO of "Metromedia" in New York City, Secaucus, NJ, and Mountain View, CA.  With respect to Defendant's experience as CTO of Metromedia, Defendant's LinkedIn page states:

> I've been instrumental in taking an historic old school TV, Radio and motion picture company, and creating a new mass audience network platform for the new and emerging digital age of broadcasting.  My role when I arrived, was purely technical.  The company had just lost it's [sic] Founder and was apparently at a "crossroad."  I, on the other hand, was merely in awe of the Metromedia name and history surrounding it, after some due diligence.

With regard to his earnings while Defendant was associated with Conway, he states in his Supplemental Response:

> It is a relatively common practice for CEOs in Silicon Valley in the start-up stage especially to work for a dollar a year and instead receive in many cases stock options if they work for an entire year to earn them.  Situations vary of course, but this is the situation [I] worked under in numerous scenarios including [my] current situation. . . .
> . . . [T]he one dollar a year that was promised to [me], was never actually paid/received . . . .
> . . . [I] never worked long enough with Conway to earn any stock options. [I] instead wanted to become general partner before reaching that point.

Sometime between February and September 2011, Defendant purchased Conway's interest in Metromedia Company, becoming its general partner, in return for a promissory note due in 2015 for $50,000.  Defendant's LinkedIn page states that he was Interim CEO of Metromedia Company in Hollywood, New York and the San Francisco Bay Area from October 2011 to March 2013, and has been CEO and Chairman of Metromedia Company in the San Francisco Bay Area since March 2013.

Defendant states that "[h]is compensation will be renegotiated, once any new entity can support compensation.  There were no options offered / provided / created after [the] arrangement [with Conway] since [Defendant] was now G.P."  In his Response to

3

Interrogatories, Defendant represents that neither he nor any affiliated entity received any revenue or reported any gross income on tax returns filed between January 2009 and the present.

In September 2012, Defendant formed Metromedia Broadcasting Corporation, a Delaware corporation. Plaintiff previously operated radio broadcasting stations through an entity with the same name. Plaintiff alleges that Defendant "duped" the principals of Ether2, an Internet start-up, into entering into a business transaction whereby Metromedia Broadcasting Corporation assumed all of Ether2's liabilities to acquire it and its four patent licenses. Plaintiff alleges that Defendant led Ether2 to believe that Plaintiff's Metromedia was acquiring Ether2. Ether2 announced the acquisition on October 4, 2012, and launched a website, www.MetromediaPetition.com. The plan was to launch, through Metromedia Broadcasting Corporation, a product named "Metro Q." The fact sheet describing the product bore Plaintiff's "MM" logo. According to Plaintiff, in April 2013, the Ether2 founders discovered Defendant's fraud and severed business ties with him.

## DISCUSSION

### A.   Legal Standard

Defendant proceeds *pro se* in this action. Courts construe submissions of *pro se* litigants liberally and read them together to raise the strongest arguments they suggest. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006).

Defendant asks the Court to dismiss this action for lack of personal jurisdiction over him. "On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has [personal] jurisdiction over the defendant." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)). "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." *Id.* at 566.

Where "a court relies on pleadings and affidavits, rather than conducting a 'full-blown evidentiary hearing,' the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted); *accord Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). "Such a showing entails making 'legally sufficient allegations of jurisdiction,' including 'an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant.'" *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) (alteration in original) (citation omitted).

The Court engages in a two-step inquiry to determine whether it has personal jurisdiction over a defendant. First, the Court determines whether there is personal jurisdiction over the defendant under the laws of the forum state. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007). If so, the Court determines whether asserting jurisdiction would be consistent with the requirements of due process under the Fourteenth Amendment. *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945)).

**B.     Analysis**

New York's long-arm statute, section 302(a) of New York Civil Practice Law and Rules, governs the scope of the Court's jurisdiction over Defendant. Plaintiff rests its assertion of personal jurisdiction on section 302(a)(3)(ii). That provision states that a court may exercise personal jurisdiction over a non-domiciliary who in person or through an agent "(3) commits a tortious act without the state causing injury to person or property within the state . . . if he . . . (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. 302(a)(3). The New York Court of Appeals has identified five elements for personal jurisdiction under section 302(a)(3)(ii), holding that the plaintiff must show:

> (1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce . . . .

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 946 N.E.2d 159, 162 (N.Y. 2011) (citing *LaMarca v. Pak–Mor Mfg. Co.*, 735 N.E.2d 883, 886 (N.Y. 2000)).

No analysis of the first four elements is needed because Plaintiff has failed to make a prima facie showing that Defendant derived substantial revenue from interstate or international commerce. The substantial revenue provision is designed to "ensure some link between a defendant and New York State to make it reasonable to require a defendant to come to New York to answer for tortious conduct committed elsewhere" and to deny jurisdiction "over nondomiciliaries . . . whose business operations are of a local character" elsewhere. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 150 (2d Cir. 2011) (internal quotation marks omitted) (citing *LaMarca*, 735 N.E.2d at 887; *Ingraham v. Carroll*, 687 N.E.2d 1293, 1296 (N.Y. 1997)). The requirement assures that the defendant is "economically big enough" to defend suit in New York. *See Ingraham*, 687 N.E.2d at 1296 (citing David D. Siegel, *New York Practice* § 88 (5th ed.)). "Whether revenue is 'substantial' under New York law is determined on both relative and absolute scales." *Ronar, Inc. v. Wallace*, 649 F. Supp. 310, 316 (S.D.N.Y. 1986) (citing *Allen v. Canadian Gen. Elec. Co.*, 410 N.Y.S.2d 707, 708-09 (N.Y. App. Div. 1978) (holding that eight million dollars, even if only one percent of the defendant's total revenue, constituted "substantial" revenue), *aff'd mem.*, 409 N.E.2d 998 (N.Y. 1980)).

Regardless of what is necessary to qualify as "substantial revenue," Plaintiff has not made a prima facie showing that Defendant derived substantial revenue of any sort, whether interstate or local. For this reason, the Court has no personal jurisdiction over Defendant and the case must be dismissed.

Plaintiff challenges the veracity of Defendant's assertion that he has earned no revenue from interstate commerce.  To that end, Plaintiff marshals the following facts: (i) Defendant claims on his LinkedIn profile to have been the CTO and Interim CEO of Metromedia Company, with offices in New York, New Jersey and California; (ii) Defendant purchased a Metromedia Company "corporate shell" in exchange for a $50,000 promissory note due in 2015; (iii) the Metromedia Broadcasting Corporation, in which Defendant's Metromedia Company holds majority interest, received licenses to four patents in its attempted acquisition of Ether2; and (iv) as the purported head of Metromedia Company, Defendant "presumably continues to pursue its relationships and activities" in multiple states.  While these allegations may show that Defendant's activities constituted interstate commerce, they are insufficient – separately or together – to establish that such activities yielded substantial revenue.

First, Defendant's representation on his LinkedIn profile that Metromedia Company has offices in New York, New Jersey and California is evidence that the company has an interstate business but does not suggest that the company or Defendant earns any revenue.   In response to Plaintiff's argument that it is "inconceivable" that Defendant was unpaid in his positions as the company's CTO and Interim CEO, Defendant explains that he, like executives in many Silicon Valley start-up companies, worked for no compensation and with a promise of stock options that never materialized.  As to the various locations, he states that he "has clearly made no income from any of those markets as of yet . . . ."

Plaintiff's reference to the corporate shell and patent licenses that Defendant acquired in separate transactions does not establish substantial, or indeed any, revenue.  Plaintiff correctly asserts that in applying the substantial revenue standard, courts in this district do not impose a specific dollar threshold.  *See, e.g.*, *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 242 (S.D.N.Y. 2010).  The Second Circuit has made clear, however, that the flexibility

does not excuse the party asserting jurisdiction from making *some* showing of substantial revenue from interstate commerce.  *See Mickalis Pawn Shop*, 645 F.3d at 150-51.  Plaintiff has not alleged any facts tending to show that the corporate shell and patent licenses generated income for Defendant, nor that he paid for them with revenue that he generated.  To the contrary, Defendant's Response to Interrogatories reveals that to acquire the assets Defendant or his company incurred debts and obligations that are yet to be paid.

Finally, for its contention that Defendant's pursuit of business relationships in several states is sufficient to meet the substantial revenue threshold, Plaintiff cites *Foot Locker Retail, Inc. v. SBH, Inc.*, No. 03 Civ. 5050, 2005 WL 91306, at *5 (S.D.N.Y. Jan 18, 2005).  *Foot Locker*, however, is inapplicable because the issue there was not whether substantial revenue was generated, but whether the revenue was derived from interstate commerce.

To the extent that these facts demonstrate the interstate nature of Defendant's commercial activities, they would preclude a finding that Defendant is one "whose business operations are of a local character."  *Mickalis Pawn Shop*, 645 F.3d at 150.  The substantiality component of the "substantial revenue from interstate commerce" test, however, goes not to the geographic scope of a defendant's operations but to their economic scale.  Here, although Defendant's business efforts may (or may not) span multiple states, the Court concludes from the absence of any allegations or evidence otherwise that Defendant did not derive substantial revenue from those activities and is not "economically big enough" to defend suit in New York.  *Ingraham*, 687 N.E.2d at 1296.

Because Plaintiff has not made a prima facie showing that Defendant derived substantial revenue from interstate commerce even after the jurisdictional discovery granted by the Court, further jurisdictional discovery is unjustified.  *See Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 186 (2d Cir. 1998) ("Since the [plaintiffs] did not establish a prima facie case that the

district court had jurisdiction over [the defendant], the district court did not err in denying discovery on that issue."); *see also Girl Scouts of U.S. v. Steir*, 102 F. App'x 217, 221 (2d Cir. 2004) ("Because [the plaintiff] did not establish a *prima facie* case of personal jurisdiction over [the defendants], and because . . . they have no good faith basis for thinking discovery will yield information likely to establish personal jurisdiction over defendants, we conclude that the district court did not abuse its discretion in denying discovery."). Furthermore, because the Court has determined that there is no personal jurisdiction over Defendant under New York law, no Fourteenth Amendment due process inquiry is necessary.

## CONCLUSION

Accordingly, for the reasons set forth above, Defendant's Motion to Dismiss (Dkt. No. 22) is GRANTED. Plaintiff's Motion for Preliminary Injunction (Dkt. No. 16) is DENIED as moot. The Clerk of Court is directed to close the motions and the case.

SO ORDERED.

Dated: October 30, 2013
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE